## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-22455-CIV-COOKE/BANDSTRA

MARIA OCHOA,

     *Plaintiff*,

v.

CITY OF MIAMI, *et al.*,

     *Defendants*.

_____/

### ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

This matter is before me on the City of Miami ("the City") and Officer Carlos

Decespedes's  ("Officer Decespedes") Motion to Dismiss.  [D.E. 10; 12].[1]  For the reasons stated

below, the Motion to Dismiss is granted in part and denied in part.

### *I. BACKGROUND*

On August 20, 2009, Maria Ochoa filed a Complaint, and on October 1, 2009, an

Amended Complaint against the City, Officer Decespedes and Officer Geovani Nunez ("Officer

Nunez")( collectively "Defendants") on nine counts: 1) Battery against all Defendants; 2) Battery

against Officer Decespedes and Officer Nunez individually; 3) False arrest against all

Defendants; 4) False arrest against Officer Decespedes and Officer Nunez, individually; 5)

Malicious prosecution against Officer Decespedes and Officer Nunez individually; 6) Negligence

---

[1]  On October 13, 2009, the City and Officer Decespedes filed two exactly identical Motions to Dismiss. [D.E. 10;12].

against the City;[2] 7) Violation of 42 U.S.C. § 1983  - Unreasonable seizure against all Defendants; 8) Violation of 42 U.S.C. § 1983 - Excessive use of force against all Defendants; and 9) Violation of 42 U.S.C. § 1983 - Violation of the First amendment against all Defendants. [D.E. 1; 8].

Plaintiff alleges that on August 31, 2005, as she was driving near NW 27th Avenue and NW 20th Street, in Miami, Florida, she was stopped for an alleged violation of a traffic control device.  (Am. Compl. 3).  She inquired about the traffic violation and Officer Decespedes mentioned that she had gone around a barricade.  (Am. Compl. 4).   Around that time, Officer Nunez arrived on the scene.  *Id.*  Maria Ochoa produced her driver's license, registration and proof of insurance.  *Id.*  While she inquired further about the traffic violation, Officer Decespedes allegedly became aggressive and requested that she stop questioning him and sign the traffic citation.  *Id.*   Maria Ochoa, still seated in her car and wearing her seatbelt, proceeded to read the citation, while complaining about Officer Decespedes's attitude, and threatening to report his conduct.  (Am. Compl. 4-5).  At that point, Officers Decespedes and Nunez yanked the citation book out of her hand and deployed a Taser to Maria Ochoa breasts.  (Am. Compl. 5).  The Officers repeatedly used the Taser against Maria Ochoa's breasts, although she presented no physical threats.  Officer Decespedes and Officer Nunez, now joined by other officers, including one who may have been a supervisor, ridiculed Maria Ochoa.  (Am. Compl. 6).  Maria Ochoa was arrested and charged with "resisting without violence."  *Id.*  Officer Decespedes, Officer

---

[2]        It is unclear whether Plaintiff is asserting claims against the City only or all Defendants in this count. Count six is captioned "Negligence against City, Decespedes and Nunez," but Plaintiff demands judgment only against the City.  (Am. Compl. 18-19).  Since Plaintiff herself states, in her Response to the Motion to dismiss, that "Count VI asserts a claim for Negligence against the CITY," we will assume that counts six seeks a judgment against the City only and not against all Defendants.  (Resp. to Mot. to Dismiss 6).

Nunez and others purportedly filed a false and misleading police report, misrepresenting that

Maria Ochoa refused to sign the citation, exited her vehicle, and became aggressive - a conduct,

Plaintiff argues, that is wholly inconsistent with the charge against her. *Id.* The report allegedly

further misrepresented the number of times Officer Decespedes discharged his Taser. *Id.* During

the ensuing criminal proceedings against Maria Ochoa, she pleaded not guilty, demanded trial

and eventually the charges were dropped by the State Attorney's Office. (Am. Compl. 7)*.*

On October 13, 2009, the City and Officer Decespedes filed a Motion to Dismiss count

VI (Negligence against the City) in its entirety and Officer Decespedes from Count II and IV as

duplicative of Counts I and III. [D.E. 12]. On December 21, 2009, Maria Ochoa filed a

Response, [D.E. 23], to which the City and Officer Decespedes replied, [D.E. 26].

## II. *LEGAL STANDARD*

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[e]very defense to a

claim for relief in any pleading must be asserted in the responsive pleading if one is required.

But a party may assert the following defenses by motion:...(6) failure to state a claim upon relief

can be granted." The courts must "accept all factual allegations in the complaint as true" and

consider the "complaint in its entirety, as well as other sources courts ordinarily examine when

ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the

complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 127 S. Ct 2499, 2509 (2007). This, however, does not give a

plaintiff *carte blanche* to merely aver a formulaic recitation of the elements of a claim supported

by conclusory labels. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting

*Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)) (citations omitted). The complaint

may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face.
*See Twombly*, 127 S.Ct. 1955, 1968-69, 1974 (2007) (abrogating the old "unless it appears
beyond a doubt that the plaintiff can prove no set of facts . . . ." standard and replacing it with a
standard requiring "only enough facts to state a claim to relief that is plausible on its face.");
*Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1037 (11th Cir. 2001) ("Pleadings must be
something more than an ingenious academic exercise in the conceivable.") (en banc) (quoting
*United States v. Students Challenging Regulatory Ag. Proc.*, 412 U.S. 669, 688 (1973)).
"[F]actual allegations must be enough to raise a right to relief above the speculative level."
*Twombly*, 127 S. Ct. 1955, 1965 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and
Procedure* § 1216 (3d ed. 2004)).  "A complaint is also subject to dismissal under Rule 12(b)(6)
when its allegations-on their face-show that an affirmative defense bars recovery on the claim."
*Marsh*, 268 F.3d at 1022.

### III. DISCUSSION

#### A. Count I and III

The City and Officer Decespedes argue that Officer Decespedes should be dismissed
from the following counts:

 i) Count I (Battery against all Defendants) because it duplicates counts II (Battery against
Officer Despecedes and Officer Nunez individually) ; and

 ii) Count III (False arrest against all defendants) because it duplicates count IV (False
arrest against Officer Decespedes and Officer Nunez, individually).

However, Plaintiff contends that those counts against Officer Decespedes are pleaded in
the alternative.  (Plaintiff's Resp. to Mot to Dismiss 3).  Plaintiff states in her Complaint that

either the Officers acted "within the course and scope of their employment," thus waiving the City's sovereign immunity pursuant to Fla. Stat. §768.28 and allowing for a claim against all Defendants; or in the alternative, the Officers acted "with malice and ill will," outside the scope of their employment, and they should be liable individually.  (Am. Compl. 8-12).  Plaintiff may indeed plead alternative theories.  Pursuant to Federal Rule of Civil Procedure 8(d)(2) and (3):

> (2) A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

> Or

> (3) A party may state as many separate claims or defenses as it has, regardless of consistency.

It is better practice "to have separated the alternative allegations in separate counts." *Johnson v. State Dept. of Health and Rehabilitative Servs.*, 695 So.2d 927, 931 (Fla. 2d DCA1997).  However, the City and Officer Decespedes do not attack the co-existence of alternative allegations, but the joinder of Officer Decespedes *within* counts I and III.  (Mot. to Dismiss 2). "In any given situation either the agency can be held liable under Florida law, or the employee, but not both." *McGhee v. Volusia County*, 679 So.2d 729, 733 (Fla.1996).  Therefore, if Officers Despecedes and Nunez acted within the scope of their employment, Plaintiff can only sue the City.  As a result, Officer Decespedes and Nunez, as individuals, should be dismissed from counts I and III.

### B. Count VI

The City and Officer Decespedes also seek the dismissal of count IV in its entirety

(Negligence against the City) based on the argument that sovereign immunity bars this claim.
(Mot. to Dismiss 3).  Plaintiff, in its sixth count, is seeking a relief against the City for the
negligent supervision and training of its officers, which has created an "organizational culture" of
fostering bad arrests and use of excessive force."  (Am. Compl. 19-23; Resp. to Mot. to Dismiss
9).

"First, for there to be governmental tort liability, there must be either an underlying
common law or statutory duty of care with respect to the alleged negligent conduct." *Trianon
Park Condominium Ass'n, Inc. v. City of Hialeah*, 468 So.2d 912, 917 (Fla.1985) (citing
*Commercial Carrier Corp. v. Indian River County*, 371 So.2d 1010, 1015 (Fla.1979)).  "A court
must find no liability as a matter of law if either (a) no duty of care existed, or (b) the doctrine of
governmental immunity bars the claim." *Farabee v. Rider*, 995 F. Supp. 1398, 1402 (M.D.
Fla.1998) *(citing Kaisner v. Kolb*, 543 So.2d 732, 734 (Fla.1989)).  According to the facts
alleged in the Amended Complaint, the City is under a duty to properly train and supervise its
officers.  (Am. Compl. 14).  Plaintiff alleges that the Florida legislature has mandated minimum
standards for training, supervision, and certification of police officers, *see* Fla. Stat. §943.11 *et
seq.*, thus creating a duty of care.  I agree that the section related to the use of dart-firing stun
guns, Fla. Stat. §943.1717, did not become effective before June 26, 2006, that is, after the date
of occurrence of the alleged facts in the case, and therefore cannot have created a statutory duty
of care for the City.  However, this statute is indicative of the existence of a common law duty of
care for the City in the training and supervision of its officers, including the way dart-firing stun
guns are used.  For that reason, I find that Plaintiff sufficiently pleaded the existence of a duty of
care.  *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir. 2001) (holding that the

district court had correctly found that the city of St. Petersburg had a duty to reasonably train its

police force).

I now turn on the issue of whether sovereign immunity bars Plaintiff's claim.  Both

parties agree that a governmental agency is immune from tort liability based upon actions

involving "'discretionary' governmental acts rather than merely 'operational' ones." *Lewis*, 260

F.3d at 1262.  The test adopted by the Supreme Court of Florida to distinguish discretionary from

operational functions is the following:

> 1) Does the challenged act, omission, or decision necessarily involve a basic
> governmental policy, program, or objective? (2) Is the questioned act, omission,
> or decision essential to the realization or accomplishment of that policy, program,
> or objective as opposed to one which would not change the course or direction of
> the policy, program, or objective? (3) Does the act, omission, or decision require
> the exercise of basic policy evaluation, judgment, and expertise on the part of the
> governmental agency involved? (4) Does the governmental agency involved
> possess the requisite constitutional, statutory, or lawful authority and duty to do or
> make the challenged act, omission, or decision? If these preliminary questions can
> be clearly and unequivocally answered in the affirmative, then the challenged act,
> omission, or decision can, with a reasonable degree of assurance, be classified as a
> discretionary governmental process and nontortious, regardless of its unwisdom.

*Kaisner*, 543 So.2d at 736.  The Supreme Court of Florida further clarifies that "the term

'discretionary' . . . means that the governmental act in question involved an exercise of executive

or legislative power such that, for the court to intervene by way of tort law, it inappropriately

would entangle itself in fundamental questions of policy and planning."  *Id. at 737* (citing

*Department of Health and Rehabilitative Servs. v. Yamuni,* 529 So.2d 258, 260 (Fla.1988)).

"An 'operational' function, on the other hand, is one not necessary to or inherent in policy or

planning, that merely reflects a secondary decision as to how those policies or plans will be

implemented."  *Id.*  "The question thus is whether the act of the officers in this case involved

"quasi-legislative policy-making ... sufficiently sensitive to justify a blanket rule that courts will not entertain a tort action alleging that careless conduct contributed to the governmental decision." *Id.*

A distinction should be made between the City's policy with respect to the training and supervision of its officers and its implementation.  The City's policy, *i.e.* its overall plan embracing the general goals and procedures regarding the training and supervision of the police officers is discretionary.  *Lewis*, 260 F.3d at 1266 ("A city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning").  The City's policy with respect to the training and supervision of its officers satisfies the four-prong test adopted by the Supreme Court of Florida.  *Kaisner*, 543 So.2d at 736.  First, the training and supervision of all officers involves basic governmental policies.  Second, the training and supervision is essential to the realization of these policies.  Third, it requires evaluation, judgment, and expertise on the part of the City.  Finally, the City has authority to define the procedures of training and supervision of its officers.  On the other hand, the *implementation* of the supervision and training of the police officers is an operational function.  *See Farabee*, 995 F. Supp. at 1404 (finding that acts involving the implementation of supervisory and training policies but not their underlying policies were operational).

Plaintiff's allegations in count VI are very broad and are not limited to how the City trains its officers and what subject matter it should include in the training, as Defendants contend. (Mot. to Dismiss 6).  Plaintiff challenges the actual implementation of the training and supervision, as well as the adherence of the City to its policy.  (Am. Compl. 14-19).  Specifically,

Plaintiff refers to the actual training of the police officers and "enforcing adherence to such training and policy". *Id.* Therefore, count six, seeking the liability of the City for negligent supervision and training, shall survive as it relates to the specific implementation of the supervision and training of police officers and should be dismissed as it relates to the City's policy and the content of its training.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss [D.E. 10] [D.E. 12] are

**GRANTED in part and  DENIED in part,** as follows:

 1) Officer Decespedes and Officer Nunez, as individuals, should be dismissed from counts I and III;

 2) Counts VI shall survive, but only as it relates to the specific implementation - and not the policy - of the supervision and training of police officers.

**DONE AND ORDERED** in Chambers at Miami, Florida this 10th day of May 2010.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:

*All Counsel of Record*

9